UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DENNIS RAMEY,                    )
                                 )
                Plaintiff,       )
                                 )        No. 2:10-CV-120
v.                               )
                                 )        *Collier / Lee*
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
                Defendant.       )

## REPORT AND RECOMMENDATION

This action was brought by Plaintiff Dennis Ramey pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying Plaintiff supplemental security income ("SSI") benefits.

Plaintiff and Defendant have filed cross motions for summary judgment [Doc. 8, Doc. 10]. Plaintiff

seeks the award of benefits, or in the alternative, a remand to the Commissioner.

For the reasons stated below, I **RECOMMEND**: (1) Plaintiff's motion for summary

judgment [Doc. 8] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 10] be

**DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed for SSI benefits, alleging disability since 2007 (Tr. 23, 89, 97). His claim was

denied initially and upon reconsideration (Tr. 50-55, 57-59). A hearing was then held before an

administrative law judge ("ALJ"), who found Plaintiff was not disabled (Tr. 12-20). The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

request for review (Tr. 1-4).

## II.    ELIGIBILITY FOR DISABILITY BENEFITS

The Social Security Administration determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009).  The claimant bears the burden of proof at the first four steps.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  In this appeal, Plaintiff challenges the ALJ's conclusion at step three.[1]

## III.    FACTUAL BACKGROUND AND ALJ'S FINDINGS

Plaintiff does not allege any error with respect to (1) the ALJ's findings relating to his physical conditions or (2) the determination of Plaintiff's mental conditions other than mental retardation.  Therefore, the facts recited herein will focus on Plaintiff's alleged mental retardation and will not specifically address the facts related to impairments not at issue in this appeal.

---

[1] Although Plaintiff makes his challenge at step three, it is difficult under the facts of this case to separate the analyses at steps two and three, and both are therefore discussed below.

## A.    Plaintiff's Medical Records

On April 25, 2008, Donna Abbott, M.A., and B. Wayne Lanthorn, Ph.D., evaluated Plaintiff (Tr. 211-19).[2]  Plaintiff alleged disability due to back problems, seizures, education, psychological problems, cracked vertebrae, and attempted suicide (Tr. 211).  He indicated he had back problems, could not read or write, and had experienced seizures for about one year, with one seizure in the past three months (Tr. 212).  He reported he took Dilantin daily (Tr. 212).  Plaintiff reported having had back problems for 15 years, indicating they had worsened as he got older (Tr. 212).  Plaintiff reported he did not drink as much as he had in the past (Tr. 212).  He stated that while he was incarcerated for public intoxication, he had tried to hang himself resulting in hospitalization (Tr. 212, 214).  He stated that it took a month for his voice to recover from the attempted suicide and he indicated he did not remember as well as he should (Tr. 212).  Plaintiff did not have current suicidal thoughts, and he denied any psychiatric treatment (Tr. 212-13).  Plaintiff reported he failed the first grade and was never in special education because it was not available (Tr. 213).  He stated he could not learn; he could not read the headlines of a newspaper; and he could not write instructions from a phone message (Tr. 213).  He could, however, write his name (Tr. 213).  Plaintiff reported that he last worked at Rowe's Furniture in August 2007, but he quit because he could not stand on his feet (Tr. 213).  Prior to that, he had worked as a roofer for seven years framing houses and doing

---

[2]  As noted by Defendant, this report is not signed by Ms. Abbott or Dr. Lanthorn (Tr. 218). According to the applicable regulation, all consultative examination reports will be personally reviewed and signed by the medical source who performed the examination. 20 C.F.R. § 404.1519n(e).  While the report technically violates the regulation, there is no suggestion they did not perform the examinations or set forth the findings in the report. In addition, Ms. Abbott electronically signed a form attesting to the fact that she "personally conducted, or personally participated in conducting, the consultative examination" (Tr. 219).  Moreover, both parties rely on portions of the consultative report.

carpentry work sporadically (Tr. 213).

On mental status evaluation, Plaintiff was appropriately oriented (Tr. 213). He was cooperative and pleasant, but had little to say spontaneously (Tr. 213). His affect was somewhat depressed, more in line with dysthymia (Tr. 214). Plaintiff's processes appeared to be intact, and he could supply his own historical information and relevant dates (Tr. 213). Plaintiff was able to attend and concentrate to complete tasks, and he could follow simple directions (Tr. 214). His eye contact was good, he appeared to be rational and alert, and he described his routine day as "pretty much watch TV, that's about it, unless a friend comes by." (Tr. 214). He washed dishes sometimes, and did some laundry (Tr. 214). He also prepared microwave meals and performed self-help skills (Tr. 214).

On the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), Plaintiff obtained a verbal IQ of 62, a performance IQ of 59, and a full scale IQ score of 58 (Tr. 215). The examiners reported, "[h]is effort seemed marginal in performing the tasks on the WAIS-III and his potential is likely to be higher." (Tr. 216). On the Wechsler Memory Scale-Third Edition (WMS-III), Plaintiff's scores ranged from extremely low to low average (Tr. 216).

Ms. Abbott and Dr. Lanthorn diagnosed alcohol dependence; cannabis dependence, in sustained full remission; dysthymic disorder; mild mental retardation (potential expected to be higher as Plaintiff did not appear to put forth his best effort); seizures for the last year; functionally illiterate; and difficulty with ongoing alcohol usage (Tr. 216-17). They assessed a Global

Assessment of Functioning (GAF) score of 55[3] (Tr. 217). They opined Plaintiff was likely to have difficulty with complex and maybe even detailed instructions, and he would likely have moderate to significant difficulty adapting to change and dealing with stress (Tr. 217). Plaintiff's general adaptation skills showed moderate to significant limitation and his intellectual functioning was in the extremely low range, but due to marginal effort, it was expected that his potential was somewhat higher (Tr. 217). They found the quality of Plaintiff's verbalizations and history would suggest he functioned at a higher level, perhaps in the "Borderline range" (Tr. 217). Plaintiff could understand and remember on a level commensurate with his intellectual functioning (Tr. 217). They opined Plaintiff could attend and concentrate to complete tasks and should be able to maintain simple routines from a mental standpoint (Tr. 217). His social interaction was fair and he should be able to work in proximity to others (Tr. 217). He could be aware of simple hazards and take precautions and should be able to set some goals and make plans to achieve these goals (Tr. 217). They opined Plaintiff appeared to have some chronic mild depression which he had for several years and found his primary limitation related to alcoholism (Tr. 217). They found he also was functionally illiterate, which could affect the types of the jobs he could perform (Tr. 217). They also stated that it was unclear how much Plaintiff's attempted hanging affected his abilities as there was no clear record to premorbid functioning (Tr. 217-18).

On May 16, 2008, Robert Paul, Ph.D., a state agency psychologist, reviewed the record evidence, including the report from Ms. Abbott and Dr. Lanthorn and Plaintiff's reported activities

_____

[3] A GAF of 51-60 indicates some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, *Multiaxial Assessment*, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") (4th ed. 2002).

(Tr. 240). He opined that Plaintiff had borderline intellectual functioning, rule out cognitive disorder NOS; limited literacy; depression; a personality disorder; and a history of alcohol/substance abuse versus dependence, resulting in moderate restrictions of daily activities and concentration, persistence, and pace, and mild difficulties in social functioning (Tr. 228-40). Dr. Paul noted that the results of psychometric testing at the consultative examination indicated cognitive functioning in the mental retardation range along with commensurate memorial functioning, but also noted Plaintiff was reported as having given less than full effort during formal testing (Tr. 240). Dr. Paul considered that the mental status examination results depicted Plaintiff with better (intact) memorial functioning and Plaintiff's intellectual functioning historically estimated as higher than mental retardation (Tr. 240). Dr. Paul also reported that the consultative examiners observed that Plaintiff was able to follow, and concentrate adequately upon, simple instructions (Tr. 240). Dr. Paul opined that, apart from the effects of acute substance intoxication, Plaintiff retained sufficient mental capacity to understand, remember and carry out at least simple instructions and relate adequately to supervisors and co-workers for purposes of task completion (Tr. 240). Dr. Paul completed a mental residual functional capacity assessment, in which he opined that Plaintiff could understand and remember simple tasks, and instructions should be conveyed verbally or by demonstration; he could sustain adequate persistence and pace for simple tasks for two hour segments across normal work day and work week; he may experience some, but not substantial, difficulty dealing with general public; he could relate adequately for purposes of task completion to co-workers and supervisors; he could adapt and respond to changes in a routine work setting given reasonable support; and he could make/set simple work-related plans and goals independently but may have difficulty with more complex decision making (Tr. 243).

Medical records from Holston Counseling Center, dated October 2, 2008 to January 19, 2009, mostly relating to Plaintiff's depression and alcohol abuse also appear in the record (Tr. 253-61). Charles Gaines, D.O., performed a psychiatric evaluation on October 20, 2008 (Tr. 258). During the mental status examination, Plaintiff's mood was dysphoric and his affect was consistent with his description of mood (Tr. 259). He was calm and cooperative, alert, and oriented times four (Tr. 259). Plaintiff's speech was of normal rate and rhythm, his concentration was good, his insight and judgment were intact, his memory was intact, and he could recall events of the past few hours, days, weeks, months, and years (Tr. 259). Plaintiff's intelligence appeared average and his thoughts were logical, coherent, and goal-directed (Tr. 259). Plaintiff did not experience hallucinations or suicidal/homicidal ideation, and he exhibited no abnormal movements or postures (Tr. 259). Dr. Gaines diagnosed major depressive disorder, alcohol dependence in early remission, nicotine dependence, and he assessed a GAF of 65 (Tr. 259). At that time, Plaintiff's medications were Vistaril, Prozac, Trazodone, and Dilantin (Tr. 259). On the same date, Dr. Gaines completed a form in which he checked a box that stated that Plaintiff was physically or mentally unfit for employment or training for employment, and he would be unable to work or participate in training for an indefinite period of time (Tr. 251).

### B.    Plaintiff's Work and School History and Hearing Testimony

Plaintiff dropped out of school after the seventh grade (Tr. 24). He experienced difficulty in school with "pretty much everything" (Tr. 27). Plaintiff cannot read or write more than his name, although he can recognize certain signs (Tr. 123, 207).

Plaintiff has past work experience doing construction work, such as roofing and framing (Tr. 25). He indicated that he had help at work with the "difficult stuff," as he could not read (Tr. 25).

When framing, someone set up the work, and he put it up (Tr. 25). He also worked in furniture manufacturing for a month in 2007 (Tr. 26, 114, 124). He quit this job due to physical difficulties (Tr. 26).

Plaintiff stated that his biggest problems were back pain, breathing problems, seizures, and depression (Tr. 28). He stated that he had problems standing and sitting due to back pain: he could stand in one spot for about five minutes, then had to sit, and he could sit for about an hour at a time, but was most comfortable lying on his back (Tr. 34-36). He indicated that pain went down his leg once or twice a week (Tr. 30). For pain, he took Tylenol and Goody's Powder, which sometimes helped (Tr. 29). Plaintiff stated that his breathing problems affected him mostly during the night and he smoked a half a pack of cigarettes each day (Tr. 36). Plaintiff, who did not have insurance (Tr. 30), indicated that he used inhalers prescribed to his sister (Tr. 36-37).

Plaintiff testified that his last seizure occurred during the past summer (Tr. 37). Plaintiff also testified that he had a stroke in the past and, as a result, had short-term memory loss (Tr. 33). Plaintiff stated that he took medication for depression and that his sister helped him pay for the medication (Tr. 31). He indicated the medication was helpful (Tr. 32). Plaintiff stated that he lived with his disabled girlfriend and she helped care for him (Tr. 33). As to his daily activities, he sat in a chair and watched television, walked to the mailbox, and washed dishes once in a while (Tr. 33). Plaintiff testified that he last drank alcohol four months prior to the hearing (Tr. 28).

On February 20, 2008, Plaintiff's sister completed a report for the Agency (Tr. 106-13). She reported that Plaintiff could not read or write, except his name (Tr. 109, 111). She also noted that since he tried to hang himself, he had difficulty remembering how to count at times (Tr. 110). Plaintiff could not remember things that were said when talking to people and would forget what he

was doing or supposed to do (Tr. 111).

### C.     ALJ's Findings

After the hearing, the ALJ issued an opinion finding Plaintiff was not disabled. At step one, the ALJ found Plaintiff was not performing substantial gainful activity (Tr. 14). At step two, the ALJ found Plaintiff had several severe impairments, including disorders of the back, seizure disorder, borderline intellectual functioning, depression, and alcohol dependence in early remission (Tr. 14). At step three, of chief importance here, the ALJ found Plaintiff did not have any impairment or combination of impairments severe enough to meet or medically equal a listed impairment, specifically finding that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02, 12.04, or 12.09 (Tr. 14). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work, "except occasional posturals, and avoidance of hazards, that is simple and routine, with limited public contact." (Tr. 15). Then, at step four, the ALJ determined that this RFC determination precluded Plaintiff from performing any of his past relevant work (Tr. 19). Finally, the ALJ relied on testimony of a vocational expert to conclude that, given Plaintiff's RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, and Plaintiff was therefore not disabled (Tr. 19-20).

## IV.     ANALYSIS

### A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

**B.     Listing 12.05C**

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The claimant bears the burden of proving every element of the listing.  *King v. Sec'y Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1986).

The ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" (Tr. 14), explaining that Plaintiff's mental impairments did not meet or medically equal listings 12.02 (organic mental disorders: psychological or behavior abnormalities associated with a dysfunction of the brain), 12.04 (affective disorders: characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome), and 12.09 (substance addiction disorders: behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system).  The ALJ's findings concerning these specific listings is not challenged by the Plaintiff.  Instead, Plaintiff argues he did meet or equal listing 12.05C [Doc. 9], which describes the circumstances in which mental retardation is severe enough to preclude gainful activity:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05.  As Plaintiff argues, if he met or equaled the criteria of listing 12.05C, then the sequential evaluation process should have ended at step three with a finding of disability.[4]  *See* Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001).

### 1.    Should the ALJ have Considered Listing 12.05C?

Preliminarily, the Commissioner concedes that the ALJ's decision does not expressly address listing 12.05C [Doc. 11 at 2, Page ID# 46], but nonetheless argues that the ALJ *implicitly* rejected the evidence of mental retardation.  The Commissioner argues the ALJ must have found Plaintiff's mild mental retardation diagnosis "somewhat doubtful" because Ms. Abbott and Dr. Lanthorn noted Plaintiff did not appear to put forth his best effort" [Doc. 11 at 15, Page ID# 59].  Similarly, the Commissioner argues that the ALJ "effectively discounted the validity of the IQ scores" by finding borderline intellectual functioning [Doc. 11 at 17, Page ID# 61].  The Commissioner also accurately states that Dr. Paul opined Plaintiff had borderline intellectual functioning, but then argues that "the ALJ's finding that Plaintiff did not meet (or medically equal) Listing 12.05 was [thus] supported by the opinion of Dr. Paul" [Doc. 11 at 16, Page ID# 60].  To the contrary, the ALJ's decision simply does not contain a "finding" on listing 12.05, implicit or otherwise.  The ALJ did not credit Dr. Paul's opinion over the opinion of Dr. Lanthorn, nor did he reject Dr. Lanthorn's opinion.  Indeed, he reported Dr. Lanthorn's findings and opinion without commenting as to what weight he assigned

---

[4] If the listing were met, the finding of disability would be final even if Plaintiff possessed the RFC to perform some types of work.  *See* Bowen v. Yuckert, 482 U.S. 137, 141 (1987) ("If the impairment meets or equals [the listing], the claimant is conclusively presumed to be disabled."); *Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000) (claimant establishes an "irrebuttable presumption" of disability when she meets or equals a listing).  Although it may seem incongruous to find a claimant disabled who can perform substantial gainful activity, such an outcome is inherent in the nature of the sequential evaluation process:  at step three of the process, the agency has not yet determined the claimant's RFC.

it (Tr. 18). In sum, the ALJ simply did not weigh the evidence relevant to listing 12.05C, and nothing in the ALJ's opinion shows that he made any finding regarding listing 12.05C. *See Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004) (holding that ALJ's failure to identify particular listing considered was not error where he nevertheless discussed the medical evidence relevant to that listing). Significantly, the ALJ specifically mentioned three other listings that were fairly raised by the evidence, making the omission of listing 12.05C all the more striking.

That the ALJ did not make a finding regarding a particular listing, however, is not in itself error. There are over 100 listed impairments, each with multiple qualifying criteria, Social Security Ruling ("SSR") 86-8, and the ALJ cannot be required to consider each of them in every case. The ALJ must, however, consider at least the listings corresponding to a claimant's "severe" impairment(s). *See* 20 C.F.R. § 404.1520a(d)(2); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 438 (6th Cir. 2010) (noting that at step three, the ALJ determines whether the claimant "is suffering from a severe impairment which . . . meets or equals a listed impairment"). As noted, the ALJ found at step two that Plaintiff had the "severe" impairment of borderline intellectual functioning, disqualifying Plaintiff from the listing for mental retardation.[5] Thus, it appears that the ALJ's step-two finding short-circuited the sequential evaluation process, effectively preventing the consideration of mental retardation as a possible listing. If so, then the ALJ's failure to discuss Plaintiff's intellectual impairment at step three turns on the propriety of the step-two finding.

---

[5] "[B]orderline intellectual functioning describes an IQ range that is higher than that for mental retardation (generally 71-84)"; however, "it is possible to diagnose mental retardation in individuals with IQ scores between 71 and 75 if they have significant deficits in adaptive behavior . . . ." *See* Am. Psychiatric Ass'n, *Disorders Usually First Diagnosed in Infancy, Childhood, or Adolescence*, DSM-IV (4th ed. 2002).

I **FIND** the ALJ erred in dismissing Plaintiff's diagnosis of mild mental retardation at step two. Step two is a *de minimis* hurdle which exists only to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (internal quotations omitted). Of course, if there is conflicting evidence in the record regarding whether the claimant suffers from an impairment at all, even a minimal one, then it is up to the ALJ to resolve that conflict. *See Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010). Still, the ALJ's resolution of evidentiary conflicts must be sufficiently clear to enable meaningful appellate review. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (*quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, the ALJ's step-two finding was not accompanied by any discussion of the evidence or, indeed, by any explanation whatsoever. There is sufficient evidence to support the presence of mild mental retardation as a severe impairment: Plaintiff was diagnosed with mild mental retardation, albeit with the disclaimer that his potential might be higher. He scored less than 70 on an IQ test and he produced evidence of poor school performance. The ALJ, however, did not address this line of evidence, and it is therefore impossible to know whether he in fact considered it. There is, of course, no requirement that the ALJ discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 453 (6th Cir. 1999)) (stating that an ALJ "can consider all the evidence without directly addressing in his written decision every piece of evidence"). Nevertheless, in order to affirm a decision which omits some significant evidence, the reviewing court must be able to discern that the

ALJ "consider[ed] the evidence as a whole and reach[ed] a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 2010 WL 3927043, *4 (6th Cir. Sep. 30, 2010) (unpublished). *See also SEC v. Chenery*, 318 U.S. 80, 92 (1943) (reviewing court may not affirm the Commissioner's decision on grounds not articulated by the ALJ). Here, however, the ALJ did not merely omit *some* evidence from his discussion; he failed to weigh *any* of the evidence relating to listing 12.05C, and I am consequently unable to find that the ALJ considered the record as a whole in reaching his conclusion.

Furthermore, step two is not the stage at which the ALJ should, without comment, make fine distinctions between two diagnoses, both supported by the record, which differ only in their *severity* along a single axis. There is no dispute that Plaintiff has a severe intellectual limitation of some degree; the question is whether that limitation was of sufficient severity to render Plaintiff unable to work. That question, in lieu of a reasoned discussion at step two, should certainly have been answered at subsequent steps. Indeed, a failure to identify a particular impairment as "severe" at step two will ordinarily be harmless precisely because the ALJ must then consider *all* the claimant's impairments at the subsequent steps regardless of whether he found them "severe." SSR 96-8p; *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). Here, however, by naming Plaintiff's intellectual impairment as "borderline intellectual functioning" instead of "mild mental retardation"—diagnoses which differ only in degree—the ALJ avoided any substantive discussion of Plaintiff's intellectual abilities. This was error.

### 2.    Was the Failure to Consider Listing 12.05C Reversible Error?

Nonetheless, the Commissioner argues that substantial evidence supports a finding that Plaintiff did not meet the listing, and that Plaintiff did not present sufficient evidence to meet his

burden of proof that he did meet the listing. In other words, the Commissioner's argument may be fairly read to argue that, even had the ALJ explicitly considered listing 12.05C, Plaintiff could not have satisfied its criteria. While I acknowledge that the ALJ *could* have found on the record that Plaintiff did not meet listing 12.05C, I **FIND** there was also sufficient evidence to the contrary, and I **CONCLUDE** the ALJ's failure to explain his rationale therefore precludes meaningful appellate review. *See Hurst*, 753 F.2d at 519.

As noted above, listing 12.05C provides that a claimant will be found disabled if he (1) experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22; (2) has a valid IQ score of 60-70; and (3) another impairment causing a significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05; *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492 n.2 (6th Cir. 2010). Taking the last of these criteria first, it is beyond dispute that Plaintiff has other impairments which cause significant work-related limitations. The ALJ found Plaintiff had "severe" impairments, including disorders of the back and seizure disorder (Tr. 14), and the presence of these "severe" impairments establishes that he suffers from "additional and significant work-related limitations." *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1 § 12.00 (equating the phrases "significantly limits your physical or mental ability to do basic work activities" and "is a 'severe' impairment(s)"); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury ("Mental Disorders"), 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000) (explaining that a "severe" impairment, as defined in step two of the sequential evaluation, is equivalent to a significant work-related limitation of function).

The record is equivocal with respect to the other criteria. First, Plaintiff bore the burden to show he had "significantly subaverage general intellectual functioning with deficits in adaptive

16

functioning initially manifested during the developmental period."[6] *Foster*, 279 F.3d at 354. The ALJ did not discuss whether Plaintiff experienced deficits in adaptive functioning during the developmental period, but he did note Plaintiff's poor school performance. *See Yates v. Astrue*, 2009 WL 2611276, at *10 (M.D. Tenn. Aug. 25, 2009) (history of poor or failing grades showed claimant had been intellectually challenged his entire life). Put simply, the record contains substantial evidence of developmental deficits. Although Plaintiff had achieved the skills necessary for minimum self support, the record does not show a person so highly functioning that his daily activities call into doubt the existence of developmental deficits. On the other hand, it is entirely possible that further factual development would show that Plaintiff does function at a degree high enough to belie the existence of such deficits. Similarly, although Plaintiff scored less than 70 on an IQ test, there is also evidence that Plaintiff did not give his best effort. It is up to the ALJ to resolve such conflicts in evidence in order to determine whether Plaintiff meets the criteria of the listing. *Garner*, 745 F.2d at 387. This Court should not usurp the role of the Commissioner by speculating what the ALJ might have considered with respect to listing 12.05C if, in fact, he considered listing 12.05C at all.

In addition, where a claimant has an impairment described in the listing of impairments but fails to meet one or more of the findings, the SSA is required to determine whether the claimant has other symptoms "that are at least of equal medical significance." 20 C.F.R. § 404.926(b)(1). Here again, the Court simply cannot determine whether the ALJ made the required finding, and if so, what

---

[6] The SSA has not quantified how severe a claimant's developmental deficits must be in order to qualify the claimant as mentally retarded, *Wall v. Astrue*, 561 F.3d 1048, 1074 (10th Cir. 2009), but they must be more than "potential" or "moderate," *see Payne v. Comm'r of Soc. Sec.*, 2008 WL 2894482, at *4 (E.D. Tenn. Jul. 23, 2008).

evidence he relied on to make that finding. In order to avoid a *post hoc* judgment that circumvents the role Congress assigned to the Commissioner, this matter should be remanded for the ALJ to make the required findings in a fashion that enables the reviewing court to determine whether substantial evidence supports them.

In view of the record as a whole, the ALJ's decision is not supported by substantial evidence. *See Smith v. Astrue*, 2010 WL 5393999, at *5 (S.D. Ohio Dec. 1, 2010) (holding that the ALJ's decision "[wa]s not supported by substantial evidence," even though the ALJ "may have [had] an adequate basis" for finding that the claimant did not meet the listing, where the ALJ failed to address and resolve conflicting evidence). Listing 12.05C was designed specifically for mildly mentally retarded people with additional severe impairments. I express no opinion whether Plaintiff is in fact mildly mentally retarded; instead, I **CONCLUDE** only that the ALJ's decision was not supported by substantial evidence because the ALJ did not address or resolve the competing evidence with respect to Plaintiff's intellectual impairment.

Therefore, I **RECOMMEND** this matter be **REMANDED** to the Commissioner for reconsideration and, if appropriate, further factual development. 42 U.S.C. § 405(g) (empowering the reviewing court, in Sentence Four, to remand a cause to the Commissioner); *Hendricks v. Astrue*, 2009 WL 648610, *9 (S.D. Ind. Mar. 11, 2009) (remanding where evidence could have supported a finding that the claimant met listing 12.05C).

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I

RECOMMEND:[7]

    (1)      Plaintiff's motion for summary judgment [Doc. 8] seeking remand under Sentence Four of 42 U.S.C. § 405(g) be **GRANTED**.

    (2)      Defendant's motion for summary judgment [Doc. 10] be **DENIED**.

    (3)      The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

This document contains hyperlinks to other documents. Such links are provided for the user's convenience only, and the Court does not guarantee their functionality or accuracy. Any link which directs the user to a document other than the document cited in the text will not supersede the textual citation. The Court does not endorse the content of, or any provider of, any document maintained by any other public or private organization.